LAGALSKI v. McCOLLOM.

AUTOMOBILES—DEATH—INSTRUCTIONS—MATTERS EQUALLY WITHIN
KNOWLEDGE OF DECEASED.
  Original and supplemental instructions to jury in action by ad-
    ministratrix of estate of deceased passenger in northbound car
    which collided head on with southbound car early in February
    in the westerly lane of a 2-lane pavement, relative to ques-
    tion as to whether or not deceased had equal knowledge of
    some of the facts as to which defendant testified and that,
    if so, defendant's testimony should be disregarded *held,* (1)
    not to have misled jury when charge is considered in entirety
    and (2) not to have constituted prejudicial error by leading
    jury into belief that deceased's driver's testimony should not
    be given any weight (CL 1948, § 617.65).

Appeal from Macomb; Spier (James E.), J.  Sub-
mitted April 12, 1960.  (Docket No. 43, Calendar
No. 48,160.)  Decided July 11, 1960.

Case by Stella Lagalski, administratrix of the es-
tate of John Lagalski, deceased, for damages be-
cause of death resulting from automobile collision.
Verdict and judgment for defendant.  Plaintiff ap-
peals.  Affirmed.

*Richard G. Eubank (William D. Ford,* of counsel),
for plaintiff.

*Cary, BeGole & Martin,* for defendant.

REFERENCES FOR POINTS IN HEADNOTES
5A Am Jur, Automobiles and Highway Traffic § 1091.

Kelly, J.   John Lagalski, a passenger in a car owned and operated by Harold B. Brown, suffered fatal injuries as the result of a collision between the car driven by Mr. Brown and the car driven by defendant. From a jury verdict of no cause of action and denial of motion for new trial, plaintiff (administratrix) appeals.

The accident occurred February 5, 1954, at approximately noon on Groesbeck highway, near Sixteen Mile road. Groesbeck highway, a 2-lane paved road running north and south, is approximately 22 feet wide, and on the day of the accident the pavement was wet.

Brown was driving north; defendant was driving south. The accident was a head-on collision, occurring on the westerly side of the center of the highway.

Brown testified that he was driving and Lagalski was seated in the front next to him when he first observed defendant's car, about 300 feet away, beginning to cross over the center line into his lane of traffic; that to avoid a collision he drove his car onto the shoulder on the west side of the highway; that he was traveling 40 to 45 miles per hour when he turned his car back from the shoulder onto the highway in the west or southbound lane of traffic, and that he applied the brakes when the cars were 10 or 15 feet apart.

Defendant testified that as he was driving south he first observed Brown's car in the proper lane; that Brown's car started to wander across the center line onto his side of the road; that he applied his brakes and slowed down to a speed of 20 to 25 miles per hour as he thought Brown was headed for a driveway on the west side of the road; that Brown, after traveling along the west shoulder of the road, suddenly came back onto the highway directly in front of him when the cars were fairly close to-

gether; that he applied his brakes and that he was stopped or nearly stopped at the time of impact.

Brown further testified that on the day before the accident he worked from 2 p.m. to 6 p.m. for Modern Electric Company and after 2-1/2 hours sleep he picked up Lagalski and they drove to the Dodge plant where both of them worked from 11 p.m. to 7:30 a.m.; that after they finished work in the morning they joined a friend who was celebrating his birthday and drove to a bar; that he had 2 drinks of ginger brandy and Lagalski also drank, but just what he drank or how much he was unable to say; that after remaining at the bar for an hour and a half the 3 of them left sometime between 10:30 and 11 a.m.; that he first drove the friend home and then drove out to look at a newly constructed housing development near Eleven Mile road, but it was too muddy for him to make an inspection of the housing development; that Lagalski was asleep in the front seat from the time he left the bar, took their friend to his home, and while he was stopped in front of the housing project; that Lagalski continued to sleep until almost 2 miles before the place of accident when Lagalski woke up and took a chew of tobacco.

There is no further testimony in the record concerning Lagalski's condition or conduct, such as moving about in the car or talking to Brown after taking the chew of tobacco.

The main question in this appeal revolves around the dead man's statute* and the extent that defendant's testimony should have been considered because the facts were equally within the knowledge of the deceased.

Plaintiff urges that there was testimony that the shoulders on both sides of the road were bumpy and

---

* CL 1948, § 617.65 (Stat Ann § 27.914).

rough and that plaintiff's decedent *"must, as a mat-
ter of reasonable judicial inference, know that he
is in a car bumping along a rough shoulder,"* and
that "it is certainly a matter of reasonable inference
that deceased, who had taken a chew of tobacco just
a few minutes before and was sitting in the front
seat, would know these facts if they were true" and,
therefore, the court should have excluded defend-
ant's testimony as being equally within the knowl-
edge of the deceased.

Appellee calls attention that the testimony was
confined to the fact that the shoulder was muddy and
that the opposite (or east) shoulder was in "terrible
shape" and states: "There is no basis for an as-
sumption that Mr. Lagalski, if awake, had any
knowledge of any of the events that transpired prior
to the collision."

The court properly concluded there was a jury
question of fact as to whether decedent, John Lagal-
ski, had knowledge of those matters testified to by
defendant. The court instructed the jury as follows:

"You heard the argument counsel have made,
plenty of comment about equal knowledge of the
deceased. I go into the reasons for the rule. I think
it has been correctly stated by counsel. If a person
dies and there is a claim against the estate or con-
troversy, legal controversy between the person that
is alive and the person that is dead, the law says:
'Well, we will put them both on the same status as
far as justice is concerned; one mouth is sealed, we
will seal the other one, and if they have a case or
claim, let them prove that claim with both mouths
sealed.' That is the theory back of it.

"Here is a case of a deceased person making a
claim against defendant McCollom. The law says,
therefore, defendant McCollom cannot testify to
anything that was within the equal knowledge of
the deceased plaintiff Lagalski, so that the jury are
now instructed that anything that was within the

equal knowledge of the deceased, John Lagalski, cannot be testified to by the defendant McCollom, so if there is any testimony on the part of the defendant McCollom as to the position of the cars, as to this accident, that you are satisfied was within the equal knowledge of the deceased, John Lagalski, then you must disregard that testimony to that extent, bearing in mind that before you invoke that rule and reject that testimony, that the plaintiff has to satisfy you that it was within the deceased's equal knowledge.

"In other words, the plaintiff will have to satisfy you that the plaintiff Lagalski was awake, saw what was coming, and knew what was going on, and had full, equal knowledge of the whole situation to the same equal extent, completely, fully, correctly, with McCollom, the opposite party, before you can disregard the testimony of McCollom as to those points."

After a period of deliberation the jury returned to the court room and the following question was asked: "Is the evidence of McCollom admissible under the law?" The court answered and gave the following supplemental instruction:

"McCollom's testimony is admissible unless you are satisfied that the plaintiff deceased had equal knowledge. The burden is on the plaintiff to prove to you that they had equal knowledge, the deceased had equal knowledge of the whole situation, knowledge equal to the defendant McCollom.

"If you are not satisfied of that by reason of McCollom maybe being asleep or not paying attention or not doing the driving himself, which he wasn't— I don't mean McCollom; I mean Lagalski—Lagalski, the passenger was not the driver, so whether or not he had equal knowledge of traffic conditions, approaching cars and the situation, whether his knowledge was equal to that of the defendant McCollom is a question of fact.

"If you are satisfied that the deceased had equal knowledge of those things that McCollom testified or to any of the things McCollom testified to, then only that portion of McCollom's testimony—remember that—only that portion of McCollom's testimony you are satisfied was within equal knowledge of the deceased, only that portion you disregard.

"That is a little complicated. In other words, you would have to find—you would have to find that the deceased had the same knowledge, same alertness, same observation, was watching traffic, approaching cars, and saw everything, position of the cars, with the same degree that the driver McCollom did. Whether or not you can, from this testimony, make such a finding is a question of fact, but if you were so satisfied, then under the law you would have to disregard any such testimony that was within equal knowledge of those 2 people.

"That is not within the knowledge of driver Brown, understand. He is the driver. It is the deceased. You will have to be able to say from this testimony you are satisfied that the deceased knew the things you want to disregard. It is stretching it pretty far, but that is the statement of the law.

"You will have to be guided by your own recollection. I don't recall there is any testimony on which you could base a finding that Lagalski knew these positions of these cars all the time, unless there is some testimony about at the last minute, confronted with a collision, he raised his arm or something of that effect, that last minute, but up to that point of the testimony what he knew what was going on and was observing the cars. What is there in the testimony that would balance this testimony of McCollom, who was driving and testified to what he saw? I ask that question because that is a question you have got to ask yourselves. You will be guided by your own recollection."

Appellant states:

"We wish to make it clear that we do not, here, object to the original charge. It is even possible that it might be said that the supplemental instructions read in the light of the original charge would be satisfactory, though we doubt it. The supplemental charge was a separate entity."

Appellant claims the supplemental instruction misled the jury into the belief that Brown's testimony should not be given any weight; and, further, that the court erred by informing the jury that plaintiff's decedent had to have knowledge of the whole situation equal to McCollom.

We conclude from examination of the original and supplemental instructions that the jury was not misled and that the charge, considered in its entirety, did not constitute error prejudicial to plaintiff.

Affirmed. Costs to appellee.

DETHMERS, C. J., and CARR, SMITH, BLACK, EDWARDS, KAVANAGH, and SOURIS, JJ., concurred.